UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **TINA SKILES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:20-CV-00443-NCC |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tina Skiles ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq*.  Plaintiff has filed a brief in support of the Complaint (Doc. 18), and Defendant has filed a brief in support of the Answer (Doc. 19).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I.  PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on March 22, 2017 (Tr. 184-90). Plaintiff's claim was initially denied on May 5, 2017, and she filed a Request for Hearing before

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

an Administrative Law Judge ("ALJ") (Tr. 97-126, 142-43).  After a hearing, by a decision dated February 12, 2019, the ALJ found the Plaintiff not disabled (Tr. 7-24).  On January 24, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-4).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022 (Tr. 13).  The ALJ determined Plaintiff has not engaged in substantial gainful activity since October 1, 2016, the alleged onset date (*Id.*).  The ALJ found Plaintiff has the severe impairments of diabetes mellitus and cervical degenerative disc disease, but that no impairment or combination of impairments meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-15).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 15).  Plaintiff must avoid climbing ladders, ropes and scaffolds, working at unprotected dangerous heights and around unprotected dangerous machinery (*Id.*).  Plaintiff is able to frequently climb ramps and stairs, as well as stoop and crouch, and she can occasionally kneel and crawl, occasionally use the bilateral upper extremities above the should level, but she must avoid concentrated exposure to extremes of cold and jobs that expose a person to whole body vibration (*Id.*).  The ALJ found that Plaintiff

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that claimant can perform including housekeeper, dining room attendant, and small products assembler (Tr. 17-18). Thus, the ALJ concluded that Plaintiff has not been under a disability from October 1, 2016, through the date of the decision (Tr. 19).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

3

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ erred in his failure to find Plaintiff's mental impairments of anxiety and depression to be severe impairments (Doc. 18 at 6-9). Second, Plaintiff argues that the ALJ failed to provide sufficient reasons for discrediting Plaintiff's allegations of pain (*Id.* at 9-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Severe Impairments

First, Plaintiff asserts that the ALJ erred in his failure to find Plaintiff's mental impairments of anxiety and depression to be severe impairments (Doc. 18 at 6-9). At step two of the sequential analysis, the ALJ determines whether a claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work

5

activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).  While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or her] ability to work."  *Caviness*, 250 F.3d at 605.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).

The ALJ determined that Plaintiff's medically determinable mental impairments of anxiety and depression were not severe impairments because they did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities (Tr. 13).  In so doing, the ALJ used a "special technique" called the psychiatric review technique ("PRT") to evaluate Plaintiff's mental health impairments.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  Under the PRT, an ALJ must rate the degree of a claimant's mental functioning using the "paragraph B" criteria.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.  Here, the ALJ found Plaintiff had mild limitations in all four paragraph B domains of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 13-14).  Thus, the ALJ concluded that Plaintiff's mental health impairments are not severe.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe[.]").

The Court finds that the ALJ's determination that Plaintiff's mental health impairments of anxiety and depression are not severe to be supported by substantial evidence.  Plaintiff alleged disability based in part on her depression and suicidal thoughts (Tr. 98, 238).  Plaintiff's

6

self-reported symptoms support her allegations of disabling mental health conditions.  For example, Plaintiff reported to medical personnel that she was feeling depressed, tired all the time, a lack of motivation, and a just okay mood (Tr. 330, 337).  In her March 29, 2017 Function Report, Plaintiff indicated, as it relates to her mental health, that she was feeling "very depressed" and cries a lot every day (Tr. 246-47).  Plaintiff further reported that she does not socialize with anyone and that does not handle stress or changes in routine well (Tr. 250-52).  The ALJ clearly acknowledged these statements and, for example, expressly indicated that Plaintiff did not socialize with anyone other than her sister, her daughter and her boyfriend (Tr. 14).  However, statements about symptoms will not alone establish disability.  20 CFR §§ 404.1529(a), 416.929(a).

The record does not establish that Plaintiff's mental health impairments cause more than a minimal impact on her ability to work.  *Caviness*, 250 F.3d at 605.  As noted by the ALJ, Plaintiff has not consistently received mental health treatment from a professional nor has she required inpatient mental health treatment (Tr. 13).  The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in a plaintiff's mental capabilities disfavors a finding of disability.  *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  During the relevant period, Plaintiff was prescribed psychotropic medication including Zoloft and Effexor by her primary care physician (Tr. 300).  Further, Plaintiff's mental health examinations both before and during the period were largely normal.  For example, at a visit in March of 2016, Plaintiff presented negative for suicidal ideas, sleep disturbance, self-injury, dysphoric mood and decreased concentration, was not nervous or anxious, was oriented to person, place, and time, and not in any distress (Tr. 326).  In February 2017, Plaintiff was found to have normal mood and affect, normal behavior, and normal judgment and thought content (Tr.

7

367).  Indeed, her physician noted that her major depressive disorder, single episode, was in full remission and "well controlled with Zoloft" with follow up not required for three months (Tr. 327-28).  Plaintiff notes that she presented to the Emergency Room at Mercy Hospital Jefferson with suicidal ideation in February 2018 (Tr. 415).  However, the primary purpose of Plaintiff's visit was abdominal pain with vomiting and diarrhea (*Id.*).  During her visit, "[p]atient also reported to nursing staff that she is suicidal" (*Id.*).  Upon physical exam, the emergency room physician noted Plaintiff had "normal mood and affect" (Tr. 418).  Plaintiff was cleared by behavioral health and subsequently denied any suicidal ideation (Tr. 425).  The ALJ also reviewed "all opinions offered on the claimant's behalf" and highlighted the May 5, 2017 opinion by Stephen Sher, Ph.D. ("Dr. Sher"), a state agency medical consultant, affording the opinion "great weight" as consistent with Plaintiff's overall treatment records (Tr. 14).  In his May 5, 2017, Dr. Sher determined that Plaintiff's depression was non-severe as "[t]here is no evidence in file that claimant had any suicide attempts, ER visits or inpatient stays for mental health issues" (Tr. 103).  He noted that Plaintiff has a history of depression and was prescribed Zoloft by her primary care physician but that her exams were generally normal with good eye contact, normal mood and behaviors, normal judgment and thought content, and ability to carry conversation well (*Id.*).

      Regardless, the ALJ considered Plaintiff's peripheral neuropathy in his RFC analysis. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).  *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your

8

residual functional capacity."). While the vast majority of the ALJ's focus during his RFC analysis was on Plaintiff's physical impairments, the ALJ noted that one of Plaintiff's chief complaints, in a record that predates the relevant period, was depression (Tr. 16). In addition to this indicia of the ALJ's complete review of the record, the ALJ also specifically indicated that he considered Plaintiff's non-severe mental impairments when he evaluated Plaintiff's RFC (Tr. 14). Therefore, to the extent the ALJ erred by not finding Plaintiff's anxiety and depression to be severe impairments, such error was harmless in light of the ALJ's consideration of the impairments in his RFC analysis. *Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently). In conclusion, the Court finds the ALJ's determination regarding Plaintiff's severe impairments to be based on substantial evidence and consistent with Regulations and case law.

**B. Evaluation of Subjective Pain Complaints**

Second, Plaintiff argues that the ALJ failed to provide sufficient reasons for discrediting Plaintiff's allegations of pain (Doc. 18 at 9-15). Specifically, Plaintiff asserts the ALJ failed to properly consider Plaintiff's testimony regarding her imitations and explain which statements he found inconsistent with the evidence in the record (*Id.* at 11-12). Instead, Plaintiff argues, the ALJ relied on one boilerplate paragraph and did not provide any discussion or analysis

9

concerning Plaintiff's subjective reports in violation of Social Security Ruling ("SSR") 16-3p[3] (*Id.* at 12).

In evaluating Plaintiff's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

As a preliminary matter, contrary to Plaintiff's assertions, the ALJ addressed Plaintiff's subjective complaints. Indeed, the ALJ detailed Plaintiff's testimony noting, as relevant to Plaintiff's pain, that Plaintiff testified as follows:

> She has shoulder and neck pain, and has seen a chiropractor. . . . She can stand for up to 45 minutes before she needs to sit and can lift half a gallon of milk. At times, she remains in bed for a week straight because she is tired and sick. … The claimant's daughter helps her with her personal needs and most activities.

---

[3] Social Security Ruling 16-3p, 2016 eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

(Tr. 15). Nevertheless, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 17). Specifically, the ALJ found that treatment records do not provide documentation of strength loss that would support a lifting restriction to half a gallon of milk and they do not indicate a reason for this significant 45-minute stating limitation (*Id.*). In doing so, the ALJ devotes nearly three full pages to discussing Plaintiff's limited medical record in which he clearly describes, acknowledges, and weighs various subjective reports, medications, diagnostic testing, objective medical reports, and medical opinions in his evaluation of Plaintiff's subjective complaints of pain.

First, the ALJ reviewed the objective medical evidence of record and determined that it failed to support the severity of the Plaintiff's alleged symptoms as indicated above. The ALJ detailed Plaintiff's limited medical history and referred to multiple objective measures during the relevant period to explain why she found Plaintiff's physical condition not disabling. Specifically, the ALJ found that records predating the alleged onset date indicated largely normal physical exams including normal range of motion and no edema (Tr. 329-31, 345-46). However, the ALJ found that objective records supported Plaintiff's allegations of spinal impairment, noting a February 25, 2017 CT Scan indicating partial C5-6 fusion of the vertebral bodies and reversal of cervical lordosis[4] (Tr. 371-72). As detailed below, the ALJ, however, found Plaintiff's treatment of her condition to be somewhat conservative in nature (Tr. 16). Plaintiff sought care from a chiropractor who provided a medical source statement addressing her pain

---

[4] Cervical lordosis is the normal, anteriorly convex curvature of the cervical segment of the vertebral column. Reverse cervical lordosis describes a condition when the neck's natural curvature has changed, usually in the opposite direction. Stedman's Medical Dictionary, 513330 (2014).

11

conditions, but his records are not provided and the ALJ determined his opinion was entitled to no weight in part because he found it to be inconsistent with Plaintiff's medical records (Tr. 16). On March 28, 2017, Plaintiff saw Sanjay Sharm, D.O. who found Plaintiff had restricted range of motion in all planes, moderate tenderness in paraspinal muscles and slight right grip weakness but no muscle atrophy (Tr. 398). A subsequent examination indicated largely normal findings including no back pain, join swelling or neck pain (Tr. 416). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Second, the ALJ detailed the largely conservative management of Plaintiff's conditions. Specifically, the ALJ noted that since her alleged onset date, Plaintiff has not required ongoing physical or occupational therapy and has not required additional surgery (Tr. 16). The ALJ also noted that, during that time, Plaintiff has also not seen an orthopedist for her spinal impairments (*Id.*). Although not addressed by the ALJ, the Court also notes that Plaintiff reported not taking any medication for her pain except, "every once in a while, I'll do an ibuprofen" (Tr. 66-68, 71, 300). An ALJ may properly consider Plaintiff's conservative treatment history in his determination of a plaintiff's credibility. *See, e.g., Kamann*, 721 F.3d at 950-51; *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (noting conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain).

Third, the ALJ properly reviewed the medical opinion evidence as it related to Plaintiff's physical impairments and her complaints of pain. Specifically, the ALJ afforded the opinion of Christopher Calandro ("Dr. Calandro"), Plaintiff's chiropractor, "no weight" (Tr. 16). On March 28, 2017, Dr. Calandro completed a medical source statement indicating that Plaintiff had neck and shoulder pain that limited her severely (Tr. 393-95). Dr. Calandro opined that Plaintiff could

12

only occasionally lift/carry less than 10 pounds and only occasionally twist, frequently stoop, balance, crouch, and crawl, and rarely climb (Tr. 394). Dr. Calandro limited Plaintiff to sitting no more than 45 minutes at a time before needing to change positions; sitting for no more than 4 hours total in an 8-hour working day; standing for no more than 5 minutes at a time before needing to sit down or walk around; standing for no more than 4 hours total in an 8-hour working day (*Id.*). Dr. Calandro further indicated that Plaintiff would need to take unscheduled breaks during an 8-hour workday every 2 hours for at least 20 minutes and that she would miss more than 4 days per month because of her conditions (Tr. 395). Of note, Dr. Calandro's handwritten comments are largely illegible (*See* Tr. 393). The ALJ found Dr. Calandro not to be an accepted medical source and determined Dr. Calandro's opinion to be inconsistent with the Plaintiff's treatment records both as of and after the date of the opinion (Tr. 16). Specifically, the ALJ noted that on the same date Dr. Calandro completed the opinion, Plaintiff saw Sanjay Sharma, D.O. who indicated, as it relates to Plaintiff's allegations of disabling pain, Plaintiff had restricted range of motion in all planes, moderate tenderness in the paraspinal muscles and slight right grip weakness but no muscle atrophy (Tr. 398). *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (internal quotation marks omitted) ("Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies."); *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (finding an ALJ may afford an opinion less weight if it is "inconsistent with or contrary to the medical evidence as a whole"). Regardless, under the Regulations in effect at the time, chiropractors were not acceptable medical sources and only acceptable medical sources could provide medical opinions. 20 C.F.R. §§ 404.1502, 416.902; *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007).

The ALJ also properly determined he could not give the opinion of Ashwin Joshi, M.D. ("Dr. Joshi"), Plaintiff's primary care physician, any weight as Dr. Joshi completed a medical source statement on March 24, 2018, but deferred offering any physical capacity limitations on Plaintiff's behalf (Tr. 17, 411-13). Indeed, to the extent Dr. Joshi's form could be considered a medical opinion, an ALJ may properly consider the detail and supportability of a physician's judgments about the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(a)(1), (c), 416.927(a)(1), (c).

Additionally, the ALJ afforded the opinion of Nancy Ceaser, M.D. ("Dr. Ceaser"), a state agency medical consultant, "great weight" (Tr. 17). In conjunction with Plaintiff's medical evaluation, on May 5, 2017, Dr. Ceaser evaluated Plaintiff's physical limitations and found Plaintiff has degenerative disc disease with the following limitations (Tr. 105-08). Plaintiff can frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; frequently climb ramps and stairs and crouch; occasionally climb ladders, ropes, scaffolds, kneel, and crawl; and had limited ability in reaching overhead in both directions (Tr. 105-06). Otherwise, Dr. Ceaser largely found Plaintiff not to be limited as a result of her physical impairments and concluded that a limitation to light work was appropriate (Tr. 108). The ALJ properly determined that Dr. Ceaser's opinion was "consistent with the residual functional capacity in this case and has a logical foundation that is consistent with the treatment records in this case" (Tr. 17).

Finally, to the extent Plaintiff asserts that her extensive work history bolsters her credibility as it relates to her subjective complaints of pain, the Court finds her assertion unavailing. As a preliminary matter, as noted by Defendant, the ALJ is not required to discuss each of the factors used to evaluate a plaintiff's subjective complaints. *Milam v. Colvin*, 794

F.3d 978, 984 (8th Cir. 2015).  Regardless, the ALJ acknowledged Plaintiff's long history of diabetes and cervical degenerative disc disease.  There is nothing in the record to suggest a worsening of her conditions as to preclude continued work at the residual functional capacity determined by the ALJ.

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints, including those of pain, is based on substantial evidence and is consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of July, 2021.

                                               /s/ Noelle C. Collins
                                              NOELLE C. COLLINS
                                              UNITED STATES MAGISTRATE JUDGE